Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6075* (95 C 3926) | **DATE** | 8/17/2001 |
| **CASE TITLE** | Hispanics United of DuPage County vs. Village of Addison, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] *(This order concerns related case 95 C 3926). Enter Memorandum Opinion and Order. Plaintiffs' petition for attorneys' fees and costs [496-1] and the supplement to plaintiffs' petition for attorneys' fees and costs [512-1] are granted. Plaintiffs awarded $189,337.50 in attorneys' fees to the law firm of Gessler, Hughes & Socol, Ltd. along with reasonable costs of $9,268.61. The law firm of Jenner & Block is awarded attorneys' fees in the amount of $53,222.00.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | AUG 2 1 2001 | |
| | Notices mailed by judge's staff. | | | date docketed | 90 |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 17 PM 3:28 | | date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HISPANICS UNITED OF DUPAGE COUNTY, et al., | )<br>)<br>) |
| Plaintiffs, | ) Nos. 94 C 6075 and<br>) 95 C 3926<br>) |
| v. | ) Judge Ruben Castillo<br>) |
| VILLAGE OF ADDISON, ILLINOIS, | )<br>) |
| Defendant. | ) |

**DOCKETED**
**AUG 2 1 2001**

## MEMORANDUM OPINION AND ORDER

Unfortunately for everyone involved in this case, including the Court, it seems that this hotly disputed case may have a longer post-settlement life than it did prior to trial. This complex housing discrimination case was settled on the eve of trial within three years of the date it was filed. Yet, very shortly, we will observe the fourth anniversary date of the entry of the Consent Decree ("decree") with no clear end in sight and very little redevelopment activity. In fact, the implementation efforts have included the involvement of two judges, and this Court hereby commends Magistrate Judge Denlow's continuing endeavors to fully assist the parties in meeting their obligations under the decree.

This matter is before the Court on Plaintiffs' motion for an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, against Defendant Village of Addison ("the Village"). Plaintiffs seek compensation for counsel's legal services rendered in this case during the two-year period after the decree was entered on December 22,



1997. As outlined herein, we grant Plaintiffs' Petition for Attorney's Fees and Costs, (R. 496-1), and the Supplement to Plaintiffs' Petition for Attorney's Fees and Costs, (R. 512-1).

## BACKGROUND

This attorneys' fees dispute arose out of two consolidated lawsuits brought by a coalition of individuals, organizational plaintiffs, and the federal government against the Village. Plaintiffs claimed that the Village's attempt to create two tax increment financing districts ("TIFs"), including the Green Oaks and Michael Lane neighborhoods, which both contain high numbers of Hispanic residents, violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. §§ 1981, 1982, 1983, and the Equal Protection Clause.

This Court has already issued three opinions in this lengthy case. In the first opinion, issued on April 20, 1995, we granted Plaintiffs' motion for class certification. *Hispanics United of DuPage County v. Vill. of Addison*, 167 F.R.D. 681 (N.D. Ill. 1995) (*"Hispanics United I"*). In the second opinion, issued on March 19, 1997, we granted in part and denied in part the Village's motion for partial summary judgment. *Hispanics United of DuPage County v. Vill. of Addison*, 958 F. Supp. 1320 (N.D. Ill. 1997) (*"Hispanics United II"*).

Finally, in the third opinion, issued on December 22, 1997, we approved a Consent Decree entered into between the parties.[1] *Hispanics United of DuPage County v. Vill. of Addison*, 988 F. Supp. 1130 (N.D. Ill. 1997) (*"Hispanics United III"*). The decree contains a number of key elements, including a ban on housing discrimination by the Village, specifically forbidding: (1) making dwellings unavailable to persons because of national origin;

---

[1] The full text of the Consent Decree is included in *Hispanics United III*, 988 F. Supp. at 1144-49.

2

(2) discriminating in the terms, conditions or privileges of the sale or rental of dwellings on the basis of national origin; (3) making statements regarding the sale or rental of dwellings that indicate discrimination on the basis of national origin; and (4) falsely representing to any person, because of national origin, that a dwelling is unavailable for inspection, sale or rental. *Id.* at 1144. Importantly, for purposes of this opinion, the decree contains a Redevelopment Plan for the Green Oaks and Michael Lane neighborhoods and two nearby areas. The Redevelopment Plan preserves more than 75% of the existing housing in the two neighborhoods and provides for limited and phased acquisition and demolition of certain buildings in order to develop new public parks in both neighborhoods, construction of new affordable housing, and acquisition of a building for a new community resource center. The decree provides for monetary and other compensation to certain owners and residents of the Village. The organizational plaintiffs are to distribute $60,000 among them at their discretion, and a fund of $100,000 is to be established to satisfy claims of plaintiffs other than residents displaced from the buildings acquired by the Village in 1994, who claimed damages other than for loss of a building or displacement from their residence. In addition, the decree provides that the Village will establish a Housing Assistance Program to assist persons displaced as a result of the Redevelopment Plan or who were displaced from the Green Oaks or Michael Lane neighborhoods before the entry of the decree. Finally, certain Village officials and employees are required to receive at least four hours of training in the terms of the decree, the Fair Housing Act, and state and local laws forbidding housing discrimination. The Village is to deposit $30,000 in an account to be used to fund programs to increase knowledge of the requirements of nondiscrimination in housing in Addison. The parts of the decree that apply to development and redevelopment activities are to remain in

effect for the life of the two TIF districts, and the remaining parts are to remain in effect for seven years. The decree also provided Plaintiffs with total attorneys' fees and costs of $2.5 million. This reduced total, which was the last item negotiated after all other substantive matters had been resolved, represented a compromise from the real fees incurred by Plaintiffs in pretrial and settlement work for this complex lawsuit.

Since the entry of the decree, Plaintiffs' attorneys have spent time and borne expenses implementing and enforcing the decree, for which, they argue, they should recover their fees and costs.[2] The Village disagrees that Plaintiffs' attorneys are entitled to post-decree attorneys' fees and costs, and both sides have filed numerous briefs in support of their respective positions on this matter. On April 11, 2001, after careful review of all the relevant pleadings, we entered a minute order granting Plaintiffs' request for supplemental attorneys' fees and costs for efforts involving implementation of the decree for the time period of December 22, 1997 through February 29, 2000. Specifically, we awarded $189,337.50 in attorneys' fees to the law firm of Gessler, Hughes & Socol, Ltd. ("Gessler") along with reasonable costs of $9,268.61. (R. 535-1, April 11, 2001 Minute Order.) Furthermore, we awarded the law firm of Jenner & Block ("Jenner") $53,222.00 in reasonable attorneys' fees. (*Id.*) On April 25, 2001, the Village filed a motion for a written opinion on the issue of post-decree attorneys' fees, which we granted.

---

[2] In their initial fee petition, Plaintiffs requested that this Court award the law firm of Gessler, Hughes & Socol Ltd. ("Gessler") attorneys' fees in the amount of $218,513.50 and costs in the amount of $8,386.96 and award the law firm of Jenner & Block ("Jenner") attorneys' fees in the amount of $70,390.00 for the time period December 22, 1997 through December 31, 1999. (R. 496, Pls.' Pet. for Attorney's Fees and Costs at 10.) In their Supplement to Plaintiffs' Petition for Attorney's Fees and Costs, Plaintiffs requested an additional $36,535.65 in attorneys' fees and costs for the time period January 1, 2000 through February 29, 2000. (R. 512, Pls.' Supplement to Pet. for Attorney's Fees and Costs at 2.)

4

Following is our written opinion addressing Plaintiffs' Petition for Attorney's Fees and Costs, (R. 496-1), and the Supplement to Plaintiffs' Petition for Attorney's Fees and Costs, (R. 512-1).

## ANALYSIS

### I. Duty to Pay Attorneys' Fees

In general, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, permits the court to award reasonable attorney's fees to the prevailing party in actions brought under § 1983 and other civil rights statutes. Furthermore, the Supreme Court has held that reasonable attorney's fees may be awarded under § 1988 for certain post-judgment monitoring of consent decrees. *Alliance to End Repression v. City of Chi.*, No. 74 C 3268, 1994 WL 86690, at *2 (N.D. Ill. Mar. 15, 1994) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986)). *See also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 121 S. Ct. 1835, 1840 (2001) ("settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees") (citations omitted). The Village concedes that Plaintiffs are "prevailing parties" in this case, (R. 500, Def.'s Resp. to Pls.' Pet. for Attorneys' Fees and Costs ¶ 2), but argues that Plaintiffs' counsel should not be awarded attorneys' fees for their efforts to monitor the decree.

First, the Village contends that Plaintiffs' counsel verbally agreed that the attorneys' fees component of the settlement was to be the full compensation for legal services associated with this litigation, including any post-decree legal services, with an exception for attorney work precipitated by "a substantial violation of the Consent Decree." (R. 498, Def.'s Resp. to Pls.' Mot. for Instructions and for Leave to File Joint Statement and Pet. for Attorney's Fees and Costs, Instanter ¶ 2.) The Village admits that this alleged agreement is not mentioned in any

5

binding document entered into between the parties. (*Id.*) We find that, in this hotly contested case, it defies credulity that such an agreement would not be reduced to writing. The Village contends that there is no written agreement because the opposing parties never agreed on the precise circumstances under which a substantial violation of the decree would occur. (*Id.*) This admission further demonstrates that there was no meeting of the minds, as would be necessary for the contract to be valid.

Moreover, the Village does not provide evidence of this agreement beyond submitting two affidavits from Village officials, which do not supply any specific details of the alleged oral agreement. At most, the affidavits prove that the Village had a unilateral belief that it had an oral contract; they do not demonstrate that an agreement with Plaintiffs was actually made. Furthermore, the Village's affidavits are countered by Plaintiffs' attorneys' affidavits which categorically deny the existence of such an oral agreement. Given the overall context of this case, we will not deny Plaintiffs' fee petition based on an alleged oral agreement. The Court concludes that an evidentiary hearing on this issue is unnecessary because, even if this Court were to fully accept the Village's affidavits, this alleged oral agreement to forgo all future attorneys' fees has not been established by a preponderance of the evidence.

The Village next argues that Plaintiffs' fee petition violates Local Rule 54.3 because it was not filed within 90 days of this Court's December 22, 1997 order approving the decree. The Local Rule, however, clearly states that "[t]he court may . . . on its own initiative, modify any time schedule provided for by this rule." Local Rule 54.3(g). On September 22, 1999, this Court entered an order setting a timetable for necessary procedures prerequisite to the filing of a fee motion, and we set October 13, 1999 as the deadline for Plaintiffs to provide the Village with the

6

information required in Local Rule 54.3. (R. 495, Pls.' Mot. for Instructions, Ex. D, Tr. Sept. 22, 1999 Status Hr'g at 5-6.) The Village did not object to the October 13 deadline for submission either at the status hearing or in its October 12, 1999 letter to Plaintiffs' counsel denying that Plaintiffs are entitled to post-decree attorneys' fees. Moreover, the Village's assertion that Plaintiffs should have submitted their fee request within 90 days after entry of the decree defies logic in this case where the decree contemplates a time period measured in years, not months.

The Village further contends that Plaintiffs' attorneys have not fully complied with the Local Rule 54.3(d)(2) requirement to submit hourly rates charged for legal services. The Village admits that Plaintiffs submitted standard billing rates, but argues that, under Local Rule 54.3(d)(2), counsel must submit records showing the hourly rates paid with respect to litigation of the same type as the case in question. (R. 513, Def.'s Surreply to Pls.' Mot. for Attorney's Fees at 2). We find that Plaintiffs complied with Local Rule 54.3(d)(2). With regard to the Jenner attorneys and paralegals, Plaintiffs submitted rate cards evincing their standard hourly rates. (R. 505, Pls.' Reply in Supp. of Pet. for Attorney's Fees and Costs at 15, citing Ex. F to Pls.' Fee Pet.) These rate cards establish the actual billing rate for Jenner's work because almost all of that firm's clients pay these standard rates. Furthermore, Gessler's attorneys and paralegals are compensated either by fee paying clients or by contingent fees. For those fees, Plaintiffs submitted affidavits indicating the attorneys' professional backgrounds and the current hourly rates for attorneys and paralegals, recent billing statements of Plaintiffs' counsel to other clients for work of a similar kind, and sworn statements from other attorneys attesting that these rates are consistent with the rates charged by other Chicago attorneys of similar experience and expertise. (*Id.* at 15 (citing Exs. A, A-1, B, C, D, and E to Pls.' Fee Pet.).) Thus, we reject the

7

Village's argument that the submissions did not demonstrate billing rates for the type of litigation in question, and we find that Plaintiffs' submissions adequately complied with the requirements of Local Rule 54.3(d)(2).

The Village also contends that the decree contemplates only specific and limited post-decree activities by Plaintiffs' counsel. Therefore, the Village argues, because Plaintiffs' counsel's post-decree role was minor, "payments for [those] routine administrative tasks were subsumed in the massive $2.5 million attorney's fee award already received by plaintiffs' counsel." (R. 513, Def.'s Surreply to Pls.' Mot. for Attorney's Fees at 13.) The Village's argument is unavailing. The Seventh Circuit has held that "the plaintiff class' right to attorneys' fees does not arise from the language of the settlement agreement." *Eirhart v. Libbey-Owens-Ford Co.*, 996 F.2d 846, 851 (7th Cir. 1993). In fact, under basic contract principles, if Plaintiffs had intended to release the Village's future obligation to pay attorneys' fees, the decree or the Stipulation Between Private Plaintiffs and Village of Addison ("1997 Fee Agreement") should have contained some language expressly indicating such an agreement. *Id.* at 849. As evidence of a release from paying future fees, the Village quotes the 1997 Fee Agreement between the private plaintiffs and the Village, which provides:

> In full accord and satisfaction of any and all claims made or which could have been made for attorneys' fees and costs incurred for the work resulting in the entry and approval of this Consent Decree by the District Court, defendant agrees to pay and plaintiffs agree to accept a total of $2.5 million.

(R. 505, Pls.' Reply in Supp. of Pet. for Attorney's Fees and Costs, Ex. A, 1997 Fee Agreement.) The Village urges that this language could include post-decree tasks. (R. 513, Def.'s Surreply to Pls.' Mot. for Attorney's Fees at 14.) We strongly disagree. The cited passage does not purport

8

to resolve liability for future attorneys' fees. If that had been the intent of the 1997 Fee Agreement, it should have included unequivocal language to that effect. *Eirhart*, 996 F.2d at 850. By its own terms, the above-quoted language only covers the entry and approval of the decree. Nothing is said about claims for fees regarding the enforcement or implementation of the decree.

Moreover, an objective evaluation of the entire breadth and terms of the decree contemplates extensive future action on the part of the Village. The numerous, far-reaching elements of the decree make clear that enforcement will require the full cooperation of the Village as well as substantial continued efforts on the part of Plaintiffs' counsel. The decree contemplates eradication of long-standing housing discrimination in the affected areas and requires that any TIF redevelopment in those neighborhoods be primarily for the benefit of the existing owners and residents. Furthermore, the decree takes on the enormous task of compensating those persons who have been or will be displaced from their buildings or residences or were otherwise injured as a result of the Village's TIF redevelopment activities. Among the many activities the Village is charged with, and Plaintiffs' counsel bear responsibility for monitoring, are: (1) redevelopment of two neighborhoods and two nearby areas, which requires preservation of at least 75% of the existing housing; (2) limited and phased acquisition and demolition of certain buildings in order to develop new public parks; (3) construction of new affordable housing; and (4) the acquisition of a building for a new community resource center in the Michael Lane neighborhood. Furthermore, the decree contemplates monetary and other compensation for former owners and residents displaced from the affected areas, which will require a vast amount of effort to monitor. A final example of the type of coordinated, massive

effort that will be required to fully carry out the decree is the relocation assistance. This portion of the decree requires establishing a Housing Assistance Program to help persons who have already been displaced or will be displaced as a result of the implementation of the redevelopment plan. Specifically, the Village must offer each displaced household two alternative residences, which must: (1) have at least the same number of bedrooms; (2) have 95% of the floor space; (3) have rent no greater than 105% that of the original residence; (4) be located in an area clearly delineated in the decree; (5) be handicapped-accessible, if so required; and (6) be within the same school attendance zone if the household has school-age children. Thus, even this sample of initiatives required under the decree makes clear the enormous ongoing efforts that will be required on the part of Plaintiffs' attorneys to properly represent their clients and ensure full compliance with the decree.

Next, the Village argues that attorneys' fees can only be paid for time spent monitoring a consent decree when there is some bona fide dispute between the parties. In this case, the Village contends, the majority of Plaintiffs' attorneys' time was spent merely overseeing or supervising the decree, *i.e.* activities which are not compensable, with some compensable work done regarding a dispute involving a park site. In support of its argument, the Village cites *Delaware Valley*, 478 U.S. 546, a class action suit brought under the Clean Water Act, in arguing that "monitoring work is only compensable if it is necessary and useful either to secure compliance or to preserve the relief obtained by virtue of the consent decree under circumstances where the program established by the consent decree is threatened." (R. 513, Def.'s Surreply to Pls.' Mot. for Attorney's Fees at 7.) The Village misreads *Delaware Valley*. In that case, the Supreme Court held that attorney's fees could be awarded for work during administrative

10

proceedings necessary to vindicate a citizens group's rights under a consent decree and explained that attorney's work would be compensable if it was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Delaware Valley*, 478 U.S. at 561 (quotations omitted). The Court did not specifically limit fees only for work performed where a consent decree is threatened.

The Village also relies on *Eirhart*, 996 F.2d 846 to argue that attorney's fees are compensable only where there is a bona fide dispute. *Eirhart*, however, states that the district court has discretion to award fees for work that "represents a reasonable effort on the part of the class to monitor the decree." *Id.* at 851. Contrary to the Village's assertion, the *Eirhart* Court did not require attorney work to be restricted to resolution of a dispute in order to award fees. Finally, the Village cites *Alliance*, 1994 WL 86690 for its proposition that Plaintiffs should not be reimbursed for general oversight and monitoring of the decree. That case also does not support the Village's argument. *Alliance* adopts the *Delaware Valley* standard that "reasonable fees are compensable . . . if the services were 'useful' and 'ordinarily necessary' to ensure compliance or protect and enforce rights awarded to the prevailing party under the consent decree." *Id.* at *5 (quoting *Delaware Valley*, 478 U.S. at 561). The Village seeks to link the *Alliance* Court's award of fees to work related to defending a threat to the consent decree, but that court did not specify such a restriction on the award of fees. In fact, the court awarded Plaintiffs all of their requested attorney's fees for monitoring activities. The only fees not awarded were those for time spent researching the enforceability of the consent decree before that issue was even raised. Thus, the caselaw supports an award of attorneys' fees for post-decree work in this case. For these reasons, we find that Plaintiffs have complied with the requirements

11

of Local Rule 54.3, and consequently, consideration of an award of attorneys' fees for post-decree work is appropriate.

## II. Calculation of Reasonable Attorneys' Fees for Plaintiffs' Counsel for the Time Period of December 22, 1997 to February 29, 2000

Plaintiffs sought total attorneys' fees of $252,337.50 for the Gessler law firm for the time period beginning December 22, 1997 through February 29, 2000.[3] The Jenner law firm sought total fees of $70,390.00 for the same time period. The Gessler law firm also sought $9,268.61 in costs for this same time period. The costs were substantially uncontested by the Village and were granted in full by the Court. Although the Village also did not substantially contest the attorneys' fees sought by the Gessler and Jenner law firms, other than to generally assert that any fees were inappropriate, this Court independently evaluated the filed fee petitions and significantly reduced the attorneys' fees awarded to the Gessler law firm to a revised total of $189,337.50 – a net reduction of $63,000 or almost exactly twenty five percent of the requested $252,337.50. Similarly, the Jenner firm was awarded a revised total of $53,222.00 in attorneys' fees – a net reduction of $17,168.00 – also a reduction of almost exactly twenty five percent.

The Court's reductions were done to eliminate all excessive and duplicative hours from the submitted fee petitions. These reductions also fully reflect the Village's arguments that a

---

[3] The total attorneys' fees sought reflect the amount requested in Plaintiffs' original petition for attorneys' fees plus those requested in Plaintiffs' supplement to their petition for attorney's fees. The supplemental request covers the time period January 1, 2000 through February 29, 2000, during which Plaintiffs' counsel, *inter alia*, worked on preparation of Plaintiffs' fee petition and briefs submitted in support thereof. These additional expenses amount to $36,535.65. The Village did not file a response to the supplement with the Court but, instead, sent a letter to Plaintiffs' counsel outlining its objections to the supplemental fee request. Because the Village's arguments against awarding attorneys fees are largely repetitive of those it earlier raised regarding the initial fee petition for post-decree work, we will address all Plaintiffs' requests for fees together herein.

12

significant quantity of monitoring work was unnecessary. Some of these excessive hours were inherently and innocently caused by the use of two different law firms to represent Plaintiffs. Rather than using a line-by-line deduction to eliminate duplicative conferences or research, this Court decided to use the flat percentage discounts disclosed herein. This method has been approved of by the Seventh Circuit. *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("a district court may either strike . . . problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage") (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657-68 (7th Cir. 1985); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).[4]

## CONCLUSION

An objective observer to this litigation could conclude that the Village's litigation positions in this case bear a striking resemblance to the delaying tactics previously used by government officials who resisted desegregation throughout the last five decades. It is noteworthy that this lawsuit was settled only on the eve of trial during the pendency of Plaintiffs' motion for summary judgment on liability.[5] The almost four years following the entry of the decree have been frustrating for everyone, especially for those Plaintiffs who have been forced to

---

[4] The other reason the Court has elected to use this percentage reduction method is to spare any embarrassment to the individual attorneys found by the Court to have undertaken unnecessary and duplicative work.

[5] It is also interesting that even though the Plaintiffs' fee request was significantly reduced, as indicated herein, it was the Village, and not the Plaintiffs, which requested this full written opinion so that it could fully avail itself of its appellate rights. The Village previously burdened Plaintiffs' counsel and the Court of Appeals with an appeal from one of this Court's enforcement orders. This appeal was ultimately dismissed as a non-appealable order. *See Hispanics United of DuPage County v. Vill. of Addison*, 248 F.3d 617 (7th Cir. 2001), after pending for seven months.

13

live in barren and vacant land areas that resemble post-war zones. The Court personally toured these affected areas, in the company of the attorneys involved in this lawsuit, prior to the class fairness hearing which was held in the Village during evening hours to accommodate all individuals who wished to testify. *See Hispanics United III*, 988 F. Supp. at 1135.

During the post-decree period, only limited redevelopment progress has been made although relocation and damage payments were made to certain members of the Plaintiff class. During this same time period, the Court has seen either intentional or benign delays by the Village. But both types of delays are harmful to all the citizens of Addison. These delays come at a heavy price to the Plaintiff class and the Village. Furthermore, as indicated in this opinion, these delays are not without financial consequences to Village taxpayers, a group which ironically includes the Plaintiff class. The Court is mindful that, by its express terms, those parts of the decree that apply to development and redevelopment activities will remain in effect for the life of the two TIF districts (Green Oaks and Michael Lane) and the remaining parts of the decree will be in effect for three more years. It is obvious that many hours of compensable attorney time can be spent during this long time period. *Id.* at 1149. The Court is confident that all of the attorneys in this case would rather see the Village spend its limited funds on redevelopment rather than the considerable attorneys' fees spent in this seemingly endless litigation.

In the meantime though, for the reasons outlined herein, we must grant Plaintiffs' Petition for Attorney's Fees and Costs, (R. 496-1), and the Supplement to Plaintiffs' Petition for Attorney's Fees and Costs, (R. 512-1). We award $189,337.50 in attorneys' fees to the law firm of Gessler, Hughes & Socol, Ltd. along with reasonable costs of $9,268.61. (R. 535-1, April 11, 2001 Minute Order.) Furthermore, we award the law firm of Jenner & Block $53,222.00 in

14

attorneys' fees. (*Id.*) These fees and costs are awarded for work done by Plaintiffs' counsel from December 22, 1997 through February 29, 2000. The federal law involved herein does not require, as the Village would have, that Plaintiffs not be compensated for the reasonable work their attorneys have undertaken to obtain the promises contained in the decree.

We strongly urge the Village to make substantial and continuous progress on the decree a top priority until all the requirements thereunder have been fully satisfied. All further delays must come to an end so that this Court's hopes for the emergence of "a new Addison, stronger and united," can once and for all be achieved. *Hispanics United III*, 988 F. Supp. at 1171. This Court noted almost four years ago that "[t]he hallmark of a great society – a true racially and ethnically integrated community – is an elusive goal that unfortunately still has not been achieved in most urban and suburban communities." *Id.* at 1135. It would be tragic if Addison could not make significant strides to achieve this elusive goal with all the benefits of the decree, which is especially dependent on the good faith efforts of the Village. These efforts will continue to be monitored by this Court as well as the citizens of Addison who continue to bear the costs of this lawsuit.

ENTERED:

_____

**Judge Ruben Castillo**
**United States District Court**

**Dated: August 17, 2001**

15